**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYLER HAMMOND and ANTONIA HAMMOND a/k/a ANTONIA CAMERA,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO. 3:09-2310** |
| **v.** | : | **(CAPUTO, D.J.)** |
| | | **(MANNION, M.J.)** |
| **CITY OF WILKES-BARRE; MAYOR THOMAS M. LEIGHTON, individually and in his official capacity; WILLIAM E. VINSKO, JR., individually and in his official capacity as City Attorney,** | : : : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

Pending before the court is defendants' motion to dismiss. (Doc. No. 6).

For the reasons set forth below, the court recommends that the defendants'

motion be **GRANTED** in part and **DENIED** in part.

## I.    FACTS AND PROCEDURAL BACKGROUND

The plaintiffs, Tyler Hammond and Antonia Hammond, bring this action

against defendants City of Wilkes-Barre ("City"), Thomas M. Leighton, Mayor

of the City of Wilkes-Barre ("Mayor"), and William E. Vinsko, Jr., an Assistant

City Attorney for the City of Wilkes-Barre. (Doc. No. 1 at ¶¶1, 3, 4 and 5).

In Count I of the complaint, the Hammond's allege that defendants violated Pennsylvania's Right-to-Know Law by giving them false information, which resulted in a violation of their Fourteenth Amendment procedural due process rights. *Id.* at ¶¶8-17. In or around August 2009, the Hammond's had allegedly requested information on property, specifically the Old River Road Bakery property. *Id.* at ¶14. On or about August 14, 2009, the defendant City allegedly provided a written letter to the plaintiffs advising them that there were no plans for the property they were interested in purchasing. *Id.* at ¶15. The property they were interested in purchasing allegedly was placed on a tax sale list in August 2009, with a sale date of September 16, 2009. *Id.* at ¶16. However, on September 15, 2009, defendants allegedly had the Old River Road Bakery property, Parcel No. 09-4093, removed from the tax sale list. *Id.* at ¶17. Moreover, the plaintiffs allege that there was a "back-door deal that resulted in Defendants' agent acquiring property for $38,000 when the public did not have a fair and equal opportunity to bid on said property." (Doc. No. 1 at 6).

In Count II of the complaint, plaintiffs allege a violation of the Fourth and Fourteenth Amendments. In July of 2009, defendants' agents allegedly unreasonably seized and destroyed the plaintiffs' personal property, which

was located on a property not owned by the defendant City, without prior notice and an opportunity to protest. *Id.* at ¶21. On or about September 1, 2009, defendants' agent began erecting a fence that encroached on plaintiffs' property. *Id.* at ¶22. As such, Antonia Hammond stated that she was going to call City Hall, and defendants' agent replied "go ahead, there all my buddies." *Id.* Plaintiff Antonia Hammond called 911 and City Hall which resulted in defendant Vinsko coming to the property. *Id.* at ¶23. Instead of instructing the agent to cease and desist, defendant Vinsko ultimately allowed defendants' agent to erect the fence the following day. *Id.*

In Count III of the complaint, plaintiffs bring state law claims for misrepresentation and interference with contracts against all defendants. Plaintiffs allege that defendants knew that they wanted to purchase the properties in question and that, nonetheless, the defendants knowingly (1) misrepresented the fact that the City owned the property in question, and (2) filed paperwork that precluded them from purchasing the properties in question, i.e. removing a property that was not owned by the City from the Tax Sale Auction List. *Id.* at ¶¶25-27. In addition, plaintiffs state that it was justifiable to rely on defendants' representation in response to their Right-To-Know requests and their conversations with the defendant Mayor and

3

defendant Vinsko. *Id.* at ¶28.

On December 22, 2009, defendants filed a motion to dismiss. (Doc. No. 6). This motion is fully briefed. (Doc. No. 7); (Doc. No. 8); (Doc. No. 10). As such, this motion is ripe for our consideration.


## II.     STANDARD

The defendants' motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly, 550 U.S. 544, 127 S. Ct. at 1965*. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of"

necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261

(3d Cir. 1994).

## III.  LEGAL ANALYSIS

Defendants have raised various arguments as to why plaintiff's claims should be dismissed. The court will consider these arguments below.

### A.  Count I

Right-to-Know Law Claim

In Count I of the complaint, the Hammonds allege that the defendants violated Pennsylvania's Right-to-Know Law, 65 P.S. §§67.101, *et seq.*, by giving them false information. Moreover, the plaintiffs claim that this resulted in a violation of their Fourteenth Amendment procedural due process rights because there was no procedural remedy available to them under the Right-to-Know Law with respect to having received false information.

The court disagrees. The Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,] and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" *Ingraham v. Wright,* *430 U.S. 651, 672 (1977).* If there is no protected liberty or property interest

implicated in a procedural due process claim, it is obviously unnecessary to determine what procedures were constitutionally mandated.

In a recent case in the Commonwealth Court of Pennsylvania, *Prison Legal News v. Office of Open Records*, 992 A.2d 942 (Pa. Commw. Ct. 2010), the court explained that individuals do not have a property interest in the information or records they are seeking under Pennsylvania's Right-To-Know Law. Specifically, the court stated:

> due process does not require a hearing because the right to information provided by the RTKL does not involve a property right because access to public records is a "privilege" granted by the General Assembly. *See Sinito v. United States Department of Justice*, 176 F.3d 512, 515 (D.C. Cir. 1999) ("Were it [a denial of access under FOIA] a cause of action sounding in property rights…"). Due process is only required when an individual faces deprivation of . . . [a] liberty or property interest, and even then a requestor is not guaranteed an evidentiary hearing. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

*Id.* at 947. Because the plaintiffs do not have a property interest in the information they were seeking, it does not appear that plaintiffs' procedural due process rights were violated.[1]

---

[1] The court notes that Pennsylvania's Right-to-Know Law provides an appeals procedure. *See* 65 P.S. §67.1101 (If a written request for access to a record is denied or deemed denied, the requester may file an appeal with the Office of Open Records or judicial, legislative or other appeals officer designated under section 503(d)).

In addition, defendants' argue that to the extent plaintiffs may have intended to bring a substantive due process claim based on the alleged violation of Pennsylvania's Right-to-Know Law, that claim must also fail. The court agrees. The Supreme Court has held that constitutionally mandated requirements of due process in a given context and case are supplied and defined by federal law, not by state law or regulations. *See Davis v. Scherer, 468 U.S. 183, 194 (1984)*. Accordingly, violations of state law cannot provide the basis for a due process claim. *Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990)*. *See also Benn v. Universal Health Sys., Inc.,371 F.3d 165, 174 (3d Cir. 2004)* ("The plain language of section 1983, interpreted and underscored by the Supreme Court . . . solely supports causes of action based upon violations, under the color of state law, of federal statutory law or constitutional rights[, and, therefore,] Section 1983 does not provide a cause of action for violations of state statutes."). Therefore, to the extent plaintiffs intended to bring a substantive due process claim against the defendants based on a violation of Pennsylvania's Right-to-Know Law, that claim should be dismissed.

Consequently, the court recommends that plaintiffs' due process claims concerning the Right-to-Know law in Count I of the complaint be dismissed.

<u>Tax Sale/Notice Claims</u>

The court notes that in a footnote in plaintiffs' brief in opposition, the plaintiffs state that they are also alleging a due process violation for "when the properties listed on the Tax Sale were magically removed without notice and an opportunity for the taxpayers to object." (Doc. No. 8 at 3 n.3) Assuming that this claim was properly alleged in the complaint, the court recommends that this claim be dismissed.

As an initial matter, to the extent plaintiffs take issue with the lack of notice  as well as the chance to object,  it appears plaintiffs lack standing. As explained by the court in *In re Dauphin County Tax Sale*, 45 Pa. D. & C.4th 274, 279 (C.P. 2000):

> the legislature clearly and without equivocation has provided that <u>only</u> owners of real estate subject to a tax sale are required to be given all notices under the Tax Sale Law and that if an owner is missing from a suit, the court lacks jurisdiction. Because petitioner is attacking the tax sale's validity on the basis of lack of notice, she must be an "owner" under the Tax Sale Law or else she lacks standing.

(internal citations and quotation marks omitted). Because plaintiffs were not owners of the property, it appears they lack standing to bring a claim based on lack of notice or the opportunity to object to the property being removed from the tax sale list.

Moreover, Pennsylvania courts have clearly explained who would be entitled to notice from the Tax Claim Bureau in the event of a real estate tax sale. As was explained in *Miller v. Clinton County Tax Claim Bureau*, 909 A.2d 461, 464 (Pa. Commw. Ct. 2006), notice need only be sent to the record owner, unless an individual put the taxing authorities on notice that they have an ownership interest in a property.

> In this case, the Tax Claim Bureau sent multiple notices to Kendrig, the record owner of the leasehold. Absent awareness that another party may have had an interest in the property, the Tax Claim Bureau satisfied its obligation to give notice to whom it was due. Due process does not require a tax claim bureau to investigate whether there is some unrecorded interest that changes ownership or some other person may have an interest in the property, but only to give notice to the individuals who have put the taxing authorities on notice that they have an interest in the property. To be entitled to notice, Miller should have complied with the guidelines set forth in the Bureau of Forestry's Guidelines and notified the County Treasurer that he was the leaseholder.

*Id. See also* 72 P.S. §5860.02. Because there was no indication that plaintiffs owned the property or that they had some other ownership interest in the property, it does not appear they were entitled to notice from the Tax Claim Bureau. Therefore, because plaintiffs were not entitled to notice of the sale, it follows that they would not be entitled to notice concerning the removal of the property from sale. *See* 72 P.S. §5860.603 (removal from sale - applies to owner or lien creditor of the owner). As such, it does not appear that

10

plaintiffs' due process rights were violated. *See Miller*, 909 A.2d at 464.

Moreover, there is no indication as to why any of the named defendants would have been required to put plaintiffs on notice.

Consequently, to the extent plaintiffs' claim their due process rights were violated because the property was removed from the tax sale list without giving plaintiffs' notice and an opportunity to object, the court recommends that this claim be dismissed.

### B. Count II

In Count II of the complaint, plaintiffs claim that their Fourth and Fourteenth Amendment rights were violated when "[d]efendants allowed their agent to enter a property not owned by the City and unreasonably seize and destroy personal property of the Hammond's including but not limited to Hammond's trees, garden, and personal items as well as build a fence that encroaches on plaintiff's property." (Doc. No. 1 at ¶20).

As an initial matter, defendants argue that plaintiffs' claims are properly analyzed under the Fourth Amendment, and not the Fourteenth Amendment, because "where a particular Constitutional Amendment provides an explicit source of protection against governmental behavior, that Amendment and not the general notion of due process must be the guide for analyzing the claims."

(Doc. No. 10 at 16). In support of this contention, defendants cite to *Graham v. Connor*, 490 U.S. 386 (1989).[2]

The court disagrees. In *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49-50 (1993), the Supreme Court explained:

> We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another. As explained in *Soldal v. Cook County*, 506 U.S. 56, 70 (1992):
>> "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn."
>
> Here, as in *Soldal*, the seizure of property implicates two "'explicit textual source[s] of constitutional protection,'" the Fourth Amendment and the Fifth [or Fourteenth]. *Ibid.* The proper question is not which Amendment controls but whether either Amendment is violated.

Furthermore, the Court explained that reliance on *Graham v. Connor* would be misplaced because it involved the arrest or detention of a criminal suspect, a subject considered to be governed by the provisions of the Fourth Amendment without reference to other constitutional guarantees. *Id.* at 50-51. By contrast, when the government seizes property not to preserve evidence

---

[2] The court notes that defendants also cite to *Albright v. Oliver*, 510 U.S. 266 (1994), but the cited passage is quoting *Graham v. Connor.*

12

of wrongdoing, but to assert ownership or control over the property itself, our cases establish that government action of this consequence must comply with the Due Process Clauses of the Fifth and Fourteenth Amendments. *Id.* at 52. Therefore, the court finds that the alleged seizure of plaintiffs' property by defendants implicates both the Fourth and Fourteenth Amendments.[3] *See Soldal*, 506 U.S. 56.

### 1. Fourth Amendment Claim

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The Fourth Amendment applies to seizures of real and personal property. *See James Good Daniel Good Real Property*, 510 U.S. at 52 (noting that the Fourth Amendment applies to the seizure of a four-acre parcel of land with a house); *Presley v. City of Charlottesville*, 464 F.3d 480, 483-84 (4th Cir. 2006) (real property); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001)

---

[3] The court notes that defendants' have not raised any arguments relating to a lack of state action or personal involvement on the part of the defendants, and as such, the court will assume for purposes of these claims, that defendants were acting under color of state law and that they had sufficient personal involvement to give rise to Section 1983 liability.

(citing *United States v. Place*, 462 U.S. 696, 701(1983)) (personal property). In addition, the Fourth Amendment protects both privacy *and* property interests. *See Soldal*, 506 U.S. 56.

Moreover, a Fourth Amendment "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Destroying property meaningfully interferes with an individual's possessory interest in that property. *See id*. at 124-25. "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them." *Brown*, 269 F.3d at 209-10 (quoting *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994)).

The plaintiffs claim that defendants violated their constitutionally secured right to be free from unreasonable governmental seizures of their real and personal property. Specifically, plaintiffs allege that defendants permitted their agents to erect a fence that encroached on their property (Real Property claim). As such, it appears that plaintiffs are asserting that a portion of their real property was unlawfully seized by defendants when this fence was put up. Furthermore, the plaintiffs allege that defendants seized their personal

property such as their trees, garden, and other personal items. (Personal Property claim).

Seizure of Real Property

With respect to the fence that encroaches plaintiffs' property, the defendants argue that plaintiffs' Fourth Amendment claim should be dismissed because the Fourth Amendment is not at issue. Defendants assert that the plaintiffs did not have an expectation of privacy in the portion of their real property the fence allegedly encroaches, and therefore, the plaintiffs' Fourth Amendment rights could not have been violated. However, the Supreme Court has explained that a plaintiff's privacy need not be implicated in order for an unreasonable seizure of property to have occurred in violation of the Fourth Amendment. *See Soldal*, 506 U.S. at 65 (Fourth Amendment protects both privacy and property interests). Thus, to the extent defendants argue that plaintiffs' Fourth Amendment claim should be dismissed because plaintiffs' privacy interests were not implicated, at this stage of the litigation the court disagrees.

In addition, defendants argue that, at best, plaintiffs have set forth a common law trespass claim. Defendants assert that the Supreme Court has decoupled a violation of a person's Fourth Amendment rights from

trespassory violations, and therefore, a trespass should not amount to a Fourth Amendment violation. However, by way of response, plaintiffs argue that a Fourth Amendment violation can occur regardless of whether a trespass occurred.

The court is compelled to agree with plaintiffs. In *Zinermon v. Burch, 449 U.S. 113, 124-25 (1980)*, the Supreme Court explained

> overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under §1983. A plaintiff, for example, may bring a §1983 action for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes, and despite the fact that there are common-law remedies for trespass and conversion. . . . A plaintiff, under *Monroe v. Pape*, may invoke §1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights.

Therefore, the court finds that whether or not a trespass occurred is irrelevant to plaintiffs' claim that defendants unlawfully seized a portion of their real property in violation of the Fourth Amendment by putting up a fence that encroaches plaintiffs' property.

The defendants have failed to offer any other arguments as to why plaintiffs' Fourth Amendment Real Property claim should be dismissed.[4]

---

[4] The court notes that in defendants' reply brief they state that plaintiff failed to allege any meaningful interference with the use of their real property. However, without any additional information concerning the placement of the

Consequently, the court recommends that defendants' motion to dismiss plaintiff's Fourth Amendment Real Property claim be denied.

<u>Seizure of Personal Property</u>

Plaintiffs allege that the defendants unreasonably seized their personal property, namely their trees and garden. Defendants assert that plaintiffs' Fourth Amendment Personal Property claim should be dismissed because the personal property was on a neighboring property, namely the Old River Road Bakery property, and therefore, the plaintiffs lack standing and a privacy interest in the place where their personal property was seized. The court will address these arguments below.

To have standing to state a unlawful seizure under the Fourth Amendment pursuant to §1983, a plaintiff must allege a property or possessory interest in the seized property. *See Cunningham v. North Versailles Township*, No. 09-1314, 2010 U.S. Dist. LEXIS 7005, at *28 (W.D. Pa. Jan. 27, 2010). It appears that plaintiffs have sufficiently alleged a possessory interest in the property seized. The complaint indicates that it was their flowers and trees which defendants' unreasonably destroyed. *Jacobsen*,

---

fence and how it encroaches the property, it appears that the fence may interfere with plaintiffs' possessory interest.

466 U.S. at 124-25 (Destroying property meaningfully interferes with an individual's possessory interest in that property.). Thus, at this juncture, the court cannot find that the plaintiffs lack standing with respect to their Personal Property claim.

In addition, as explained above, the Fourth Amendment protects against unreasonable interference in property interests regardless of whether there is an invasion of privacy. *See Cunningham*, 2010 U.S. Dist. LEXIS 7005, at *27 (rejecting defendants' argument that plaintiff's Fourth Amendment claim should be dismissed because he failed to properly allege a privacy interest in the seized property). Therefore, the court cannot agree with defendants' argument that plaintiffs Fourth Amendment personal property claims should be dismissed because plaintiffs' lacked a privacy interest in the property where the items were seized.

Consequently, the court recommends that defendants' motion to dismiss plaintiffs' Fourth Amendment Personal Property claims be denied.[5]

---

[5] In addition, the court notes that in the present briefs, the parties have failed to address whether the seizures were reasonable with respect to the real and personal property claims. However, the court notes that in order to state a claim for an unlawful seizure, a plaintiff must sufficiently allege that the defendants' conduct was unreasonable in light of the surrounding circumstances. *See Cunningham*, 2010 U.S. Dist. LEXIS 7005, at *30-31. A review of the complaint indicates that plaintiffs' alleged that the putting up of

2. Fourteenth Amendment Claim

In plaintiffs' brief in opposition, they clarify that they are alleging a substantive due process claim based on the destruction of their personal property and seizure of their real property. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law . . . ." U.S. Const. amend. XIV. "[T]o sustain a [non-legislative] substantive due process claim, 'a plaintiff must have been deprived of a particular quality of property interest.'" *See* *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 139-40 (3d Cir. 2000) (not all property interests worthy of procedural due process protection are protected by the concept of substantive due process)). As was explained in *Nicholas*, "whether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that

––––––––––––––––––

the fence and destruction of their personal property was unreasonable. Moreover, plaintiffs alleged that a call was made to the police and City Hall to stop defendants' actions, but they persisted anyways. With no other information before the court, at this stage of the proceedings, the court cannot determine whether the defendants acted reasonably. *See id.* (The reasonableness of the state actors' seizure requires a careful balancing of governmental and private interests). Because plaintiffs' have set forth allegations indicating that the seizures may have been unreasonable, and since the parties have not raised this issue in their briefs, the court need not further address the reasonableness issue at this time.

interest is 'fundamental' under the United States Constitution." *Id.*

The Third Circuit has adopted an approach to substantive due process that focuses on the nature of the property interest at stake. *Id.* at 141.

> By way of illustration, we have so far limited non-legislative substantive due process review to cases involving real property ownership. *See, e.g.*, *DeBlasio*, 53 F.3d at 600 ("[land] ownership is a property interest worthy of substantive due process protection"). As one court has aptly observed, this is unquestionably "a fundamental property interest dating back to the foundation of the American colonies." *Homar*, 63 F. Supp. 2d at 577. And, as we concluded in *DeBlasio*, "one would be hard-pressed to find a property interest more worthy of substantive due process protection than [land] ownership." 53 F.3d at 601.

*Id.* Therefore, the Third Circuit has been reluctant to extend substantive due process protection to other, less fundamental property interests. *Id. See also* *Wrench Transp. Sys. v. Bradley*, 340 Fed. Appx. 812, 816 (3d Cir. 2009) (finding that a personal property interest in trucks was not "fundamental" for purposed of our Fourteenth Amendment substantive due process analysis).

Here, plaintiffs are alleging that the defendants' interfered with or deprived them of their personal property and real property. To the extent plaintiffs take issue with their personal property, the court finds that plaintiffs' personal property interest in their trees and garden(s) are not "fundamental" under the Constitution. *See Bradley*, 340 Fed. Appx. at 816 (explaining that

real property ownership, and not personal property interests, are entitled to substantive due process protection). As such, plaintiffs' personal property interests are not entitled to substantive due process protection, and therefore, the courts recommends that plaintiffs' substantive due process claim regarding their personal property interests be dismissed.

However, to the extent that plaintiffs allege that they were deprived of their real property, namely their land due to the fence that was put up, the court finds that this interest is entitled to substantive due process protection. *See* [Nicholas, 227 F.3d at 141](). Moreover, in order for plaintiffs to prevail on their substantive due process claim concerning their real property, plaintiffs must also show that the defendants' actions "can properly be characterized as arbitrary, or conscience shocking in a constitutional sense." *[Kalian at Poconos, LLC v. Saw Creek Estates Cmty. Ass'n, 275 F. Supp. 2d 578, 588 n.12 (M.D. Pa. 2003)]()* (citations omitted). A review of the complaint indicates that plaintiffs' alleged that putting up the fence was unreasonable. More specifically, plaintiffs alleged that a call was made to the police and City Hall to stop defendants' actions, but that the defendants persisted to put up the fence anyways. Whether or not plaintiffs will be able to show that defendants' actions were arbitrary or conscience shocking is questionable, but at this

stage of the proceedings, the plaintiffs' allegations are sufficient to permit discovery to proceed.[6]

To summarize, the court recommends that plaintiffs' substantive due process claim with respect to their real property interest proceed, and that plaintiffs' substantive due process claim with respect to their personal property interests be dismissed.

## C. Count III

Defendants seek dismissal of plaintiffs' remaining state law claims in Count III of the complaint. Specifically, defendants argue that "[b]ecause Plaintiffs' federal claims fail, this Court should decline to exercise its supplemental jurisdiction and dismiss Plaintiffs' state law claims contained in Count III of their complaint." (Doc. No. 7 at 15 n.6). By way of response, plaintiffs argue that "Given the above analysis and the fact that Defendants assert no independent reasons for dismissal, this Court should deny Defendants' request to dismiss the state law claims." (Doc. No. 8 at 9-10).

The court is compelled to agree with the plaintiffs. Because defendants

------------

[6] The court notes that in this motion defendants have not raised any arguments as to why the substantive due process Fourteenth Amendment claims should be dismissed besides their argument that the court should only treat plaintiffs' claims in Count II as Fourth Amendment claims.

did not substantively address plaintiffs' remaining state law claims in Count III, the court recommends that these claims proceed.

### D. Official Capacity Claims

The plaintiffs have brought claims against defendants Leighton and Vinsko in both their official and individual capacities as well as the City of Wilkes-Barre. Defendants Leighton and Vinsko argue that plaintiffs' claims against them in their official capacities should be dismissed because they are redundant of the claims against the City of Wilkes-Barre. The court agrees.

It is well established that a suit against a state official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y. City Dept. of Soc. Servs*., 436 U.S. 658, 690 n.55 (1978)). Pursuant to this standard, the claims against defendants Leighton and Vinsko are redundant with their Monell claims against he City of Wilkes-Barre. Therefore, the court recommends that plaintiffs' official capacity claims be dismissed.

## IV. RECOMMENDATION

For the reasons elaborated above, **IT IS RECOMMENDED THAT**,

defendants motion to dismiss, (Doc. No. 6), be **GRANTED** in part and **DENIED** in part, specifically dismissing (1) all claims in Count I of the complaint, (2) plaintiff's Fourteenth Amendment substantive due process claim with respect to plaintiffs' personal property in Count II, and (3) the official capacity claims against defendants Leighton and Vinsko. Therefore, the court recommends that the following claims proceed: (1) plaintiffs' Fourth Amendment claims in Count II, (2) plaintiffs' Fourteenth Amendment substantive due process claim with respect to plaintiffs' real property in Count II, and (3) plaintiff's claims in Count III.

s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** September 17, 2010
O:\shared\REPORTS\2009 Reports\09-2310-01.wpd