**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYLER HAMMOND and**<br>**ANTONIA HAMMOND,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:09-2310** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **CITY OF WILKES-BARRE *et al.,*** | : | |
| | : | |
| **Defendants** | | |

## M E M O R A N D U M

This long-running and contentious suit is a dispute between the City of
Wilkes-Barre and a family who resides there. Plaintiffs Tyler and Antonia
Hammond and their children live on a property in Wilkes-Barre, the back of
which abuts land known as the "Old River Road Bakery" property. Plaintiffs
kept personal property on the Old River Road property, and brought this
lawsuit alleging that their belongings were destroyed by or at the direction of
defendants. They further claim that their real property has been encroached
by the building of a fence between their property and the bakery property.
Plaintiffs have sued under various constitutional provisions as a result of the
alleged destruction and encroachment of their property. Because there is
insufficient evidence to show that these actions can be attributed to the City
of Wilkes-Barre, summary judgment will be granted to defendants.

Pending before the court are a motion for summary judgment filed by
defendants City of Wilkes-Barre, Mayor Thomas M. Leighton, and William E.

Vinsko, (Doc. 98), and plaintiffs' motion for summary judgment against all defendants. (Doc. 99).  Also pending is defendants' motion to strike plaintiffs' expert reports. (Doc. 111).

## I.    BACKGROUND[1]

Plaintiff brought this suit against the City of Wilkes-Barre, Wilkes-Barre Mayor Thomas M. Leighton, and William E. Vinsko, Jr., an Assistant City Attorney for Wilkes-Barre. (Together, the "city defendants"). Plaintiff also brought suit against Leo Glodzik III.[2]

Plaintiffs Tyler and Antonia Hammond reside in Wilkes-Barre, and their property is adjacent to a property known as the Old River Road Bakery property. Plaintiffs had personal property including garden pruners, fruit trees, a section of fence, topsoil, cast iron radiators from their home, a clawfoot bathtub, numerous vegetable plants, and firewood on the Old River Road property, on what Tyler Hammond described as "the old railroad right of way" section of that property. (Doc. 103-11, at 25-26). Plaintiff's admit that the personal property was not on their own land.

While plaintiffs were away on vacation in July or August of 2009, this

_____

[1]Unless otherwise noted, the facts are taken from plaintiffs' and defendants' statements of undisputed facts and responses to statements of facts. (Doc. 101, Doc.102, Doc. 107, Doc. 110). Facts in dispute are noted.

[2]Mr. Glodzik is proceeding pro se. (Doc. 84). He has not joined in, opposed, or otherwise responded to the instant motions, nor has he filed his own summary judgment motion.

personal property was removed and/or destroyed by defendant Leo Glodzik.[3] Plaintiffs were away on vacation when their property was destroyed. A friend, Kevin Dougherty, called to tell them that their garden had been destroyed by people on "bobcats". (Doc. 105-5, at 15). Mr. Dougherty recalled seeing "a bulldozer going through their garden," and testified that he only saw Mr. Glodzik, and that nobody else was on the bakery property at that time. (Doc. 103-3, at 8).

Wilkes-Barre Mayor Tom Leighton testified that he did not give Mr. Glodzik "permission per se" to go onto the bakery property, but stated that Wilkes-Barre gave Mr. Glodzik permission to "clean it up. It was a mess. It was all overgrown weeds and rodents." (Doc. 103-21, at 61). He stated that Glodzik was authorized to "clean up our property that he was purchasing" and that "we never authorized him to destroy anybody's personal property that was on our property." (Id., at 90). He further testified that it was a win/win situation because Glodzik cleaned up the property at no cost to the city. (Id., at 32). Butch Frati, the city director of operations, testified that there were meetings at which Mayor Leighton was present and at which he stated that it was important to handle the transition of the property properly and to make sure that whatever Glodzik was going to do to the property was up to building code. (Doc. 103-4, at 21-22). Glodzik stated that at the time he cleared out

---

[3]Mr. Glodzik's company had a contract to be Wilkes-Barre's towing company, having entered the highest bid to get the contract. He was not acting in his capacity as tower during the incidents relevant to this case.

the property, he was under the impression that the city owned the property, and that he did not yet own it. (Doc. 103-8, at 15).

Mr. Dougherty testified that Ms. Hammond "must have called city hall" because a zoning official came to the bakery property and later Mr. Vinsko arrived. (Doc. 103-3, at 9). Ms. Hammond testified that she called 911 at some point. (Doc. 105-5, at 19). Mr. Vinsko testified that he was on the bakery property for a few minutes on September 1, having been called by the building code official because plaintiffs had questions over how the property would be used. (Doc. 103-20, at 5). Mr. Vinsko testified that he spoke to Ms. Hammond for "four or five minutes and that was it," and represented that the property would be used for something in compliance with the zoning code, because he was not aware of the plans for the property. (Id., at 6).

Later that day, he sent her a letter assuring that the City would make sure that the changes occurring to the property would be legal, and that "in our experience, Mr. Glodzik has always complied with the City's Ordinances, and we will continue to monitor this matter to be sure that remains the case." The letter also notes that the City would be engaging a surveyor to make sure the property lines were properly delineated. (Doc. 105-1). That survey was completed by Emmet Burke, who surveyed the property on September 23, 2009 and determined that the fence did not encroach on the Hammonds' land. (Doc. 103-1, at 6-7).

Mr. Vinsko stated that he had no involvement with the erection of the

4

fence, that Ms. Hammond never mentioned a fence, and that no fence-building was occurring during the short time he was on the bakery property that day. (Doc. 103-20, at 11-13). Ms. Hammond testified that she asked Mr. Vinsko "where is the permit for the fence." (105-5, at 20). She testified that she saw Mr. Vinsko and Mr. Glodzik speaking that day, but did not hear their conversation. (Id., at 28). The fence, which plaintiffs allege encroaches on their property, was completed sometime after September 1, 2009.

Ms. Hammond stated that she asked Mr. Glodzik about zoning that day, and represented that she was going to call city hall. She testified that his response was "go ahead, they're all my buddies over there." (Doc. 105-5, at 29). Mr. Glodzik's testimony differs, stating that Ms. Hammond confronted him for cleaning up the area, stating "this is my property," and told him that because of his cleaning-up actions, groundhogs and some birds who reside there had to move their families. Glodzik, thinking she was joking and knowing that Mr. Hammond was a firefighter, asked if any of his friends in the police or fire departments had put her up to it. (Doc. 105-8, at 37-40). He stated that after she called the police on him, and he was fined for not having the proper permits, he realized that Ms. Hammond had not been joking. (Id., at 39-40).

Plaintiffs contend that during these events, Mr. Glodzik was acting at the behest of, as an agent of, or with the acquiescence of the city, which the city defendants contest. Plaintiffs also argue that at the time the personal property was destroyed, the railroad right of way portion of the bakery property which

abutted plaintiffs' land was owned by Old River Road Bakery, Inc., and not the City of Wilkes-Barre or Mr. Glodzik. An agreement of sale of the River Road property was executed on July 31, 2009 between Wilkes-Barre and Mr. Glodzik. (Doc. 103-23). The sales agreement states that "the buyer shall take possession of the Property in its 'as is' condition as of the date of this Agreement," and that "[t]he Buyer acknowledges that any entrance upon the Property prior to settlement is at the Buyer's own risk, and the Buyer holds the Seller harmless and indemnifies the Seller against any and all claims." (Id.).

Having signed the sales agreement, Mr. Glodzik went in to clean up the bakery property. Mr. Glodzik secured a line of credit for the property, to maintain the needed insurance to cover the River Road property. (Doc. 103-8, at 133). His insurance company required him to protect the property, which led him to hire a company to build a fence. (Id.). Although Mr. Glodzik invested considerable money into the property, the property was never deeded to him.

In November of 2009, the previous owner of Old River Road Bakery, Inc., Gordon Kutz, was asked by Mr. Vinsko to sign a quitclaim deed, which was "intended to correct all potential legal description and pin assignment errors" that may have occurred at the time the property was transferred from the River Road Bakery to the City of Wilkes-Barre during bankruptcy

proceedings. (Doc. 105-2).[4] Mr. Vinsko testified that the bakery property and the right of way portions of the property were actually only one parcel of land, although they had been mistakenly listed as two for tax purposes. It was supposed to have been marked as one parcel, but never was. (Doc. 103-20, at 31-32). Mr. Vinsko testified that Luzerne County officials became nervous that they would be named as defendants in plaintiffs' instant lawsuit, and that other people would raise the issue because the County had improperly listed many properties on tax rolls, and so they refused to reverse the mistaken tax identifications, although they recognized that the listings were improper. (Id., at 8, 27-28). He said that after a hearing on a motion to remove the improper listing from the tax rolls in open court, a state court judge ordered that the improper listing be removed from the rolls. (Id., at  33).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute

---

[4]There is no signed quitclaim deed in the record. Rather, there is a deed signed by all parties except Mr. Kutz, and testimony from Mr. Kutz that he signed the quitclaim deed. (Doc. 103-7, at 16).

is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny,

139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

Plaintiffs bring claims against all defendants for procedural due process violations under the Fourteenth Amendment and unlawful seizure of property under the Fourth Amendment pursuant to 42 U.S.C. §1983. State law claims for interference with contract and misrepresentation remain against the city defendants.[5]

### §1983 Standard

Section 1983 does not itself bestow substantive rights, but instead

---

[5]Claims for due process violations through a violation of Pennsylvania's Right-to-Know law, violations of substantive due process under the Fourteenth Amendment, and violations of the Fifth Amendment were previously dismissed in this action. Claims against the individual defendants in their official capacities have also been dismissed. (Doc. 66, Doc. 67). Although the state law claims remain pendant, neither party has provided briefing addressing them.

creates a remedy for violation of a person's constitutional rights. Gonzaga

Univ. v. Does, 536 U.S. 273 (2002). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . 42 U.S.C. §1983.

To establish a claim under §1983, a person must prove that someone

deprived him of a constitutional right while acting under the color of state law.

Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Liability under §1983 is personal in nature and can only follow personal

involvement in the alleged wrongful conduct shown through specific

allegations of personal direction or actual knowledge and acquiescence. See

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)(citing Rhode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Acquiescence exists

where "a supervisor with authority over a subordinate knows that the

subordinate is violating someone's rights but fails to act to stop the

subordinate from doing so." Festa v. Jordan, 803 F.Supp. 2d 319, 325 (M.D.

Pa. 2011)(*quoting* Robinson, 120 F.3d, at 1294).

A municipality is a "person" for purposes of §1983. See Bd. of the

County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403

(1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689

(1978)). But §1983 does not allow municipal liability under a theory of respondeat superior. Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id. The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id.

**Mr. Glodzik Was Not Acting Under Color of State Law**

The issues in both of the pending motions for summary judgment are the same. At issue are whether Mr. Glodzik was acting under color of state law[6] and whether Mr. Vinsko and Mayor Leighton had personal involvement in the events at the heart of this case. The facts relevant to whether Mr. Glodzik was a state actor are the same facts that demonstrate that the individual city defendants were not personally involved with Mr. Glodzik's activities. The court thus addresses the two issues together.

It is uncontroverted that Mr. Glodzik signed an agreement of sale for the

---

[6] "The 'under color of state law' inquiry under 42 U.S.C. §1983 and the 'state action' requirement under the Fourteenth Amendment to the United States Constitution are identical in most contexts. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995)(*citing* Robison v. Canterbury Village, Inc., 848 F.2d 424, 427 n. 3 (3d Cir.1988)). The court addresses the terms interchangeably.

Old River Road property on July 31, 2009. (Doc. 103-23). The agreement states that the buyer "shall take possession of the Property in its 'as is' condition as of the date of this Agreement." (Id.) Under Pennsylvania law, this made him the equitable owner of the property.

When an agreement for the sale of land is signed, the buyer of the land becomes equitable owner of the land, and the seller retains a security interest for the purchase price. Byrne v. Kanig, 332 A.2d 472, 474 (Pa. Super. 1974)(*citing* DiDinato v. Reliance Standard Life Insurance Co., 249 A.2d 327 (Pa. 1969)); Payne v. Clark, 187 A.2d 769 (Pa. 1963). An equitable owner bears the risk of loss for any damage occurring to the property subsequent to the execution of the agreement of sale. Byrne, 332 A.2d at 474. The ownership position actually changes, and the property "may properly be referred to and treated as sold." Knight v. Knight, 1988 WL 166666, at *2 (Pa. Com. Pl. Apr. 6, 1988)(*citing* Bauer v. Hill, 110 A. 346 (Pa. 1920)). Thus, Mr. Glodzik was the equitable owner of the bakery property at the time the personal items were destroyed and the fence erected.

Plaintiffs do not address defendants' evidence that Mr. Glodzik had an equitable interest in the property. They point to Glodzik's testimony that he did not own the bakery property when he was cleaning it up, and that Mayor Leighton believed that the property was Wilkes-Barre's at that time. But that Mr. Glodzik did not have legal title to the property does not change the fact that he had an equitable interest which allowed the property to be "treated as

sold" and a sales agreement which gave him possession of the bakery property. Plaintiffs also maintain in their various briefs that Wilkes-Barre did not own the railroad right-of-way portion of the property at the time the sales agreement was signed. Yet plaintiffs do not present any evidence that controverts Mr. Vinsko's testimony that the bakery property was truly one parcel of property owned by the city. Nor do they address the state court order affirming that the bakery property is truly one parcel.[7] Mr. Glodzik had an interest in and possession of the property as a matter of Pennsylvania law. Plaintiffs have failed to raise a genuine question of material fact as to whether Glodzik owned the property at the time he cleared it and erected a fence.

The court next examines whether, given his status as equitable owner of the bakery property, Mr. Glodzik was a state actor at the time the personal property was destroyed and the fence erected. "Courts have traditionally utilized four tests to determine if a private party constitutes a "state actor" under Section 1983. The first is the so-called "close nexus test", which finds state action when there is a sufficiently close nexus between the state and the private party or the action of that party such that the private party may fairly

_____

[7]The evidence that Mr. Kutz was asked to sign a quitclaim deed correcting any possible errors in the bakery property deed does not create a question of material fact. Mr. Vinsko's testimony that he asked Mr. Kutz to sign the deed as a matter of clarification given the concern on the part of county officials has not been controverted by plaintiffs, and, given the state court adjudication of the issue, there is thus no question of material fact regarding the city's ownership of the entire bakery property at the time the sales agreement was signed.

be treated as the state itself. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Second is the "symbiotic relationship test", where "the state has so far insinuated itself into a position of interdependence [with the private party] that it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961). Third, the simple "joint action test", which examines whether the private party is a "willful participant in joint action with the State or its agents." Lugar v. Edmonson Oil Co., 457 U.S. 922, 941 (1982). Finally, is the "public function test", in which the court determines whether a private party has been delegated a power, which is traditionally and exclusively reserved to the State. Terry v. Adams, 345 U.S. 461, 468–470 (1953)." Eubanks v. Young Women's Christian Assoc., 2013 WL 4781033, at *6 (M.D. Pa. Sep. 5, 2013).

Here, plaintiffs argue that there was a close nexus between the city, its officials, and Mr. Glodzik because they "allowed Glodzik free reign [sic] over the control of an alleged City of Wilkes-Barre property." (Doc. 108, at 5). Under the "close nexus" test, "mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify upholding the State responsible for those initiatives." Blum, 457 U.S., at 1004-05. Rather, only when the state has exercised "coercive power" or "provided such significant encouragement" to a private decision "that the choice in law must be deemed" to be the government's can it be held responsible for a private action. San Fran. Arts & Athletics, Inc., v. U.S. Olympic Comm., 483 U.S. 522, 546

14

(1987)(*citing* Blum, 457 U.S., at 1004). The question is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself. Groman, 47 F.3d, at 638 (*citing* Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).

Here, drawing all reasonable inferences in favor of the plaintiffs, there has been no showing that Mr. Glodzik had a sufficiently close nexus with Wilkes-Barre that his actions in clearing the property and building a fence can be attributed to the state. Plaintiffs do not present sufficient evidence to create questions of material fact, but ask the court to accept forced interpretations of deposition testimony that has been taken out of context to make their case. While the court must, and has, drawn all reasonable inferences in plaintiffs' favor in reviewing the defendants' motion for summary judgment, it need not accept misrepresentations or forced interpretations of witness testimony.

First, as discussed above, Mr. Glodzik had possession and equitable ownership of the property, and was thus a private person acting to improve his own property. Although they do not address defendant's evidence that Glodzik had equitable ownership of the property, plaintiffs do point to several facts to indicate that Mr. Glodzik was nevertheless working at the direction or behest of the city, and that there was a close nexus between the city, Mayor Leighton, Mr. Vinsko, and Mr. Glodzik. Plaintiffs note that the bakery property had been locked, and that Mr. Glodzik could only have gained access to the bakery property if the city granted him entry. Even if the court assumes that

15

the City unlocked the property for Mr. Glodzik, the City allowing someone with the right to possess a property to access it hardly demonstrates that the new buyer is acting as an agent of the city. This is no different from the seller of a house turning over the keys to the house to its buyer.

Plaintiffs also suggest that because the Mayor testified that he allowed Glodzik to clean up the property, the state was deeply involved in Glodzik's actions. As the property's possessor and equitable owner, Glodzik was entitled to clean it up or improve it. *See* Knight, 1988 WL 166666, at \*2. Mayor Leighton described the cleanup as a "win/win," and it undoubtedly did confer a benefit on the city for the property to be cleaned up at no cost. But just because some benefit was conferred on the city does not mean the state was intimately involved. *See* Crissman v. Dover Downs Entertainment Inc., 289 F.3d 231, 244 (3d Cir. 2002)("it would be a radical concept if the state's receipt of funds from private actors were to convert them into state actors"); Sherry v. Associates Commercial Corp., 60 F.Supp. 2d 470, 475 (W.D. Pa. 1998)("the provision of a service to the public, standing alone, is not enough to convert the private actor's conduct into state action")(*citing* Groman, 47 F.3d, at 640). A private property owner tidying or improving her property is often a benefit to her municipality, but it would be absurd if such an action, so common to ownership of property, converted a private actor into a state one simply because there was an attendant benefit to the municipality.

Further, there is no evidence at all that Mayor Leighton did anything

beyond generally approve of Glodzik's plan to clean the property. There is no evidence that Mayor Leighton had knowledge that Mr. Glodzik would do anything other than clean up the property, and not even any evidence that he had knowledge that plaintiffs maintained personal property on the bakery land. His only knowledge about the condition of the bakery property was that it was full of "overgrown weeds and rodents." Nor is there an indication that Mayor Leighton told Glodzik what to do with his property. While Mayor Leighton testified that he had heard Glodzik was going to put up a fence, there is nothing to demonstrate that he directed Glodzik to do so, or that he had knowledge that the fence would encroach on plaintiffs' property or violate their rights in any way.

Instead, plaintiffs' arguments seek to interpret the facts surrounding the sales agreement between the city and Glodzik (in other words, that the two had a seller/buyer relationship) as evidence that the two were intimately entangled in government business. That interpretation is not, however, supported by the evidence, even drawing all inferences in favor of plaintiffs. Plaintiffs have not shown that there is a genuine question of material fact that the involvement of Mayor Leighton went beyond general knowledge and approval of Glodzik's plans to clean up the property. Mayor Leighton was not Mr. Glodzik's supervisor, Glodzik was not his subordinate, and there is no evidence that Leighton had actual knowledge that Glodzik was violating the rights of plaintiffs, making it difficult to see how he could be liable for

acquiescing in Mr Glodzik's activities.

Plaintiffs additionally rely on the facts that Mr. Vinsko and other city officials were intermittently present at the bakery property while Glodzik worked on it, that Mr. Vinsko sent Ms. Hammond a letter to ensure that city code would be followed, and that Mr. Frati testified that the mayor was monitoring the transfer of the property to Mr. Glodzik and wanted to ensure that he was following city building codes. These facts do not create a question of material fact as to Glodzik being a state actor, or to Mr. Vinsko's personal involvement in any violation of rights, because these facts only indicate that the city was monitoring the construction site as it would any construction site, not that it exercised unusual control over Mr. Glodzik's actions or had actual knowledge and acquiescence in any activity that violated plaintiffs' rights.

First, the court notes that Mr. Vinsko was only on the site once, after Ms. Hammond complained about Glodzik's activity and the city operator called him. His responding to a complaint about Mr. Glodzik cannot reasonably be interpreted as evidence that Glodzik was acting at his direction, or that he had control over Glodzik's actions. Next, "the mere fact that a business is subject to state regulation does not by itself convert its action in that of the State for purposes of the Fourteenth Amendment." American Mrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51 (1999). Here, the evidence of the municipal employee visits to the bakery property only reflects that they were there ensuring that proper permits were in place and that city ordinances were

18

followed. Mr. Vinsko's letter indicates only that the city was and would continue to monitor Glodzik's compliance with the city's codes. The city has the power to require people doing construction to comply with its rules, and to impose fines for noncompliance. Indeed, Mr. Glodzik was fined for failing to have a proper permit while working on the bakery property. But a rule that the enforcement, or lack of enforcement, of codes necessarily gives rise to a finding of state action or municipal involvement would result in the possibility of a §1983 suit every time neighbors dispute actions taken at a construction site. The presence of city officials at the site, and Mr. Vinsko's letter, are not sufficient to show that Mr. Glodzik's actions were really those of the state, or to show that Mr. Vinsko was in any way in charge of or directing those actions.

Plaintiff similarly points to Mr. Glodzik's belief that people working at city hall were his buddies as evidence that he is a state actor. Even accepting plaintiffs' version of the argument between Ms. Hammond and Mr. Glodzik, Mr. Glodzik inviting her to call city hall because he is buddies with city officials does not show that Mr. Vinsko or Mayor Leighton directed him to undertake the actions he did. Glodzik having the belief that city officials would back him up in a dispute over the appropriateness of his actions, or that his friendly relationship with city officials would benefit him in a dispute, does not indicate that he was acting on behalf of the city to the extent that his actions could actually be reasonably considered the actions of the city.

Finally, plaintiffs seem to argue that because Mr. Vinsko and the other city officials did not stop Mr. Glodzik from clearing the land or building the fence, or that they did not specifically tell him not to destroy plaintiffs' personal property, that they are responsible for any violation of plaintiffs' rights that occurred. But this argument is one that has been deemed unavailing by various courts. The Due Process Clause does not obligate the state to protect citizens from each other, but rather it protects the people from the state. DeShaney v. Winnebago Cty. Dept. of Soc. Servs., 489 U.S. 189, 196 (1989). The Constitution in general, and particularly the Due Process Clause, do not "require the state to furnish residents with property they lack, or ensure that they do not suffer loss at private hands." Archie v. City of Racine, 847 F.2d 1211, 1220 (7th Cir. 1988). The city did thus not have a constitutional obligation to stop a private landowner from infringing on his neighbor's rights.

The above analysis of the record in this case not only demonstrates that there are no questions of material fact as to whether Glodzik was a state actor, but also that plaintiffs have not raised questions of material fact as to Mayor Leighton and Mr. Vinsko having personal involvement in these events such that they or the City of Wilkes-Barre could be liable under §1983. Plaintiffs have failed to present sufficient evidence to create questions of material fact as to the issues in defendants' motion for summary judgment. Therefore, the city defendants' motion for summary judgment is **GRANTED**. For the same reasons, plaintiffs' evidence is insufficient to support their

motion for summary judgment, which is accordingly **DENIED**.

The court does not decide whether Mr. Glodzik wrongfully destroyed plaintiffs' personal property or whether his fence encroaches on their land.[8] Because Mr. Glodzik is not a state actor and there is no municipal involvement, the constitutional claims for those complaints cannot lie. Plaintiffs may have tort or property law remedies against Mr. Glodzik, but they do not have claims against him under §1983. Although the court does not condone Mr. Glodzik's lack of participation in this case since the summary judgment motions were filed, the court has determined that he was not acting under color of state law, and so the §1983 causes of action against him cannot remain and are **DISMISSED**. As there are no remaining federal causes of action, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims against the city defendants pursuant to 28 U.S.C. §1367(c)(3). Plaintiffs' state law claims are thus **DISMISSED**.

**Motion to Strike**

Defendants filed a motion to strike the reports of plaintiffs' expert land surveyor Nicholas Piccini. (Doc. 111). Having determined that Glodzik was not

---

[8]The court does note that the plaintiffs' own expert places the extent of the alleged encroachment at between .04 and .14 feet onto the Hammonds' property, (Doc. 105-4),which is a range of .48 inches to 1.68 inches of encroachment. Even assuming that such an encroachment is extant, the court does not deem such *de minimis* encroachment to be the sort of thing over which a federal case ought to be made.

acting under color of state law and that individual defendants did not have personal involvement in the events at issue, the court need not address whether the fence encroaches on plaintiffs' property. Thus, the expert reports are moot, and defendants' motion to strike is **DISMISSED AS MOOT**.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** the city defendants' motion for summary judgment, (Doc. 98), is **GRANTED**. Plaintiffs' motion for summary judgment, (Doc. 99), is **DENIED**. Plaintiffs' §1983 claims against Leo Glodzik III are **DISMISSED**. Because there are no federal claims remaining, the court will not exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367(c)(3). Plaintiffs' state law claims are therefore **DISMISSED**. Defendants' motion to strike, (Doc. 111), is **DISMISSED AS MOOT**. The Clerk is directed enter judgment in favor of defendants. The Clerk is directed to close the case. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: June 5, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2009 MEMORANDA\09-2310-01.wpd